Brandon H. Brown (SBN 266347)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: bhbrown@kirkland.com

Gregory S. Arovas (*pro hac vice* application forthcoming)
Todd M. Friedman (*pro hac vice* application forthcoming)
Alex Henriques (*pro hac vice* application forthcoming)
James E. Marina (*pro hac vice* application forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: greg.arovas@kirkland.com
Email: todd.friedman@kirkland.com
Email: alex.henriques@kirkland.com
Email: james.marina@kirkland.com

Paul F. Brinkman (*pro hac vice* application forthcoming)
KIRKLAND & ELLIS LLP
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5100
Email: paul.brinkman@kirkland.com

*Attorneys for Plaintiff TP-Link*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TP-Link USA Corporation<br><br>Plaintiff,<br><br>v.<br><br>Netgear, Inc.<br><br>Defendant. | CASE NO. ________________<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

1. Plaintiff TP-Link USA Corporation ("TP-Link") is a market leader in Wi-Fi Wireless Local Area Network technology. TP-Link has achieved this position by providing innovative, high quality products at reasonable prices—which is made possible by a decades-long commitment to in-house research, design, and development by TP-Link entities worldwide.

2. Unlike TP-Link, Netgear Inc. ("Netgear") largely adopts technology developed by others, while focusing much of its own efforts on other issues. While Netgear's approach of piggy-backing on technology developed by others has helped it profit in the marketplace, this has been accomplished through infringement of patent rights.

3. TP-Link brings this complaint to seek relief for Netgear's infringement of the following U.S. Patents: 7,636,550 ("the '550 patent"), 8,176,148 ("the '148 patent"), 8,229,357 ("the '357 patent"), 7,672,268 ("the '268 patent"), and 8,774,008 ("the '008 patent") (collectively, the "Asserted Patents").

## PARTIES

4. TP-Link USA Corporation is a corporation organized under the laws of the State of California. TP-Link's principal place of business is at 10 Mauchly, Irvine, CA 92618.

5. TP-Link's business operations relate to testing, development, sales, and marketing for Wi-Fi routers and other products. The technology behind these innovative and affordable products is developed through research, design, and development activities of TP-Link entities around the world.

6. Netgear is a Delaware corporation with a principal place of business at 350 East Plumeria Drive, San Jose, CA 95134.

7. Netgear sells Wi-Fi routers and other wireless products. The technology in Netgear's Wi-Fi routers is largely adopted from other companies, while much of Netgear's own business activities focus on other issues.

## JURISDICTION & VENUE

8. This action arises under the patent statute 35 U.S.C. § 271 *et seq*.

9. This Court has subject matter jurisdiction over this action arising from federal law under 28 U.S.C. § 1331.

10. This Court has personal jurisdiction over Netgear because Netgear maintains its principal place of business in San Jose in this District and engages in continuous and systematic business activities within this District. Further, Netgear has engaged in the conduct at issue in this action from its headquarters located in this District.

11. Venue is proper in this District pursuant to at least 28 U.S.C. § 1400(b) because Netgear maintains its principal place of business in this District, resides in this district, and has committed acts of patent infringement in this District.

## INTRADISTRICT ASSIGNMENT

12. For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this patent action is assigned on a district-wide basis.

## ASSERTED PATENTS

13. TP-Link owns by assignment the full right, title, and interest in U.S. Patent No. 7,636,550, titled "System and Method for Determining Channel Quality in a Wireless Network," which issued December 22, 2009, naming Michael Yuen, David Hill, and Roger Durand as inventors. A copy of the '550 patent is attached as Exhibit 1.

14. The '550 patent is generally directed to a mechanism for channel selection performed by an access point (such as a router). Channel selection is based on a channel quality index (CQI) for a number of available channels, where the CQI quantifies channel quality as a function of co-channel congestion, adjacent channel interference, and in-band interference.

15. The invention claimed by the '550 patent significantly improves wireless communications technology through the use of novel methods, processes, and apparatuses that facilitate wireless communications as compared to prior art wireless communication systems. In prior art wireless communication systems, there was a known technical problem of potential interference in frequency bands generated by competing devices. The '550 patent improves on these prior art wireless communication systems by disclosing a technological solution for identifying a desirable transmission channel in an efficient manner using CQI. At the time of the invention disclosed in the '550 patent, using CQI to identify a desirable transmission was not well understood, routine, or conventional. The technological improvement disclosed in the '550 patent improves wireless communication systems by

reducing channel congestion, thereby increasing the efficiency of the wireless communication systems. The claims of the ’550 patent include novel limitations that reflect this improved communication system, including the calculation of CQI and modifying the wireless communication system based on that calculated CQI. Using the CQI is the novel manner claimed by the ’550 patent that provides faster, higher quality wireless communication for end users.

16. TP-Link owns by assignment the full right, title, and interest in U.S. Patent No. 8,176,148, titled “Method and System for Wireless Network Configuration,” which issued May 8, 2012, naming Pravin S. Savkar as inventor. A copy of the ’148 patent is attached as Exhibit 2.

17. The ’148 patent is generally directed to mechanisms for automatically configuring user devices and network devices of a wireless network such as a Wi-Fi network. This automatic configuration is based on comparing hardware and software characteristics of the devices and formulating appropriate configuration plans. Characteristics of both the client device and network device are determined, capabilities are determined based on the characteristics, configuring plans are determined based at least in part on a comparison of the capabilities, and automatic configuration is performed to establish a network.

18. The invention claimed by the ’148 patent significantly improves upon prior art wireless networks by removing constraints that previously prevented wireless networks from fully utilizing their capabilities. Specifically, the ’148 patent identified a technical problem in the network setup process for prior art wireless networks that required complicated settings for encryption, network identification, and/or hardware compatibility. The complicated nature of the setup for these prior art wireless networks resulted in wireless networks with limited capabilities. The claimed technological invention of the ’148 patent used novel methods to improve this complicated setup process by utilizing technical solutions to automatically determine the characteristics of the wireless system, including evaluating the compatibility of different systems, eliminating the entry of cumbersome security codes, and facilitating the process of adding multiple remote systems. This improved methodology utilized technological solutions that were not well understood, routine, or conventional at the time of invention of the ’148 patent and resulted in improved wireless communication networks. By using technological solutions to perform these assessments to enhance network setup, users less knowledgeable about

wireless network configuration gained access to wireless networks that provide greater flexibility and convenience as compared to traditional hard-wired networks.

19. TP-Link owns by assignment the full right, title, and interest in U.S. Patent No. 8,229,357, titled "Method and System for a Portable Wireless Range," which issued on July 24, 2012, naming Scott David Arena as inventor. A copy of the '357 patent is attached as Exhibit 3.

20. The '357 patent generally relates to a mechanism for controlling network access in a Wi-Fi network. A first network device, such as an access point, has its own network connection and generates and transmits its own data on the network. A second device can connect to the network through the first network device. A user of the first device can control whether the first device provides network access to the second device or not. The first device can access the network whether or not the second device has network access.

21. The invention claimed by the '357 patent significantly improves on prior art wireless networks by extending the range of wireless networks. Prior art wireless networks had dead spots and range limitations which adversely impacted the utility of wireless networks by reducing the mobility and connectivity of devices in these prior art wireless networks. To address the technological issues that created dead spots and/or imposed limitations on the range of a wireless network, the inventions disclosed in the '357 patent provided for technological solutions that extend the range of devices connected to the wireless network. The '357 patent discloses that this improved technological solution may be achieved through providing concurrent network access from one device to another device, which was a technique that was not well understood, routine, or conventional at the time of invention. Using this novel solution improved wireless network access by reducing and/or eliminating dead spots and reducing limitations on the range of a wireless network, thereby increasing the mobility and connectivity of devices connected to such a network.

22. TP-Link owns by assignment the full right, title, and interest in U.S. Patent No. 7,672,268, titled "Systems and Methods for Implementing Double Wide Channels in a Communication System," which issued on March 2, 2010, naming Kenneth Stanwood, Timothy Leo Gallagher, Sheldon L. Gilbert, Yair Bourlas, Charles Bergan, Sam A. Liu, and Darren Smith as inventors. A copy of the '268 patent is attached as Exhibit 4.

23. The ’268 patent generally relates to a mechanism for transmitting data in a wireless communication system to support communication over single communication channels, such as over either channel A or B, and aggregated communication channels, such as over both channels A and B. The system identifies and categorizes receivers based on whether they support single channel communication (e.g., A or B) or communication over aggregated channels (e.g., A and B), buffers data accordingly, and generates data frames for transmission over a given channel by pulling data from the buffer associated with that channel and from the aggregated channels’ buffer.

24. The inventors of the ’268 patent identified that a problem in prior art wireless communication systems is that communication over a single regulatory- or standards- compliant size channel is insufficient to support the transfer rate needs of high bandwidth users. Further, the use of larger bandwidth channels in the prior art suffers from economies of scale and flexibility—because only a small fraction of devices are capable of transmission over larger bandwidth channels—and runs afoul of regulatory requirements. The inventors of the ’268 patent significantly improved these prior art systems by disclosing novel technological solutions and systems that allow the use of either two totally independent channels of one bandwidth or a combined channel of double the bandwidth in a single device. The novel ’268 patent techniques further enable the use of two regulatory or standards compliant single-bandwidth channels to logically provide user data services with a double bandwidth channel, thus allowing the transport of services which have sustained or peak rates greater than can be accommodated on one single bandwidth channel. The claimed techniques for managing and logically combining two channels in a wireless system were not well understood, routine, or conventional at the time of the invention, and the ’268 patent inventors’ novel method for doing so increased available bandwidth while preserving economies of scale and regulatory compliance.

25. TP-Link owns by assignment the full right, title, and interest in U.S. Patent No. 8,774,008, titled “Real-Time Network Measurement,” which issued July 8, 2014, naming Frank Y. Ou, Thomas Richard Gonzalez, and Martin Reckleben as inventors. A copy of the ’008 patent is attached as Exhibit 5.

26. The ’008 patent generally relates to mechanisms for data path selection in a network device. The device includes an interface circuit that receives data and measurement information and

a measurement circuit that identifies a quality of the network based on the received measurement information. The device also includes provisioning circuitry that selects between a first data path and a second data path over which to transmit data, based at least in part on the measurement information received.

27. The ’008 patent discloses that network systems that enable communication between multiple devices have numerous hardware devices that may affect the transfer of data across the network. These hardware devices include, but are not limited to, routers, switches, repeaters, and/or terminals. These hardware devices create data paths, and larger networks have more intricate data paths with additional factors that impact the quality of the network. In prior art networks, monitoring devices (e.g., probes) were required to be placed at two ends of a network and work in combination to monitor the quality of the network. In the prior art networks, monitoring required stopping the flow of user data in order for test packets to be sent, which negatively impacted the transfer of data. The inventors of the ’008 patent created a novel technological solution for determining network quality in real-time without hindering the flow of user data. Examples of these technological solutions to determine real-time network quality include utilizing looped-back information or other information to determine jitter, delay, throughput, bandwidth, data loss, or other aspects that reflect or provide insight to the network quality. The ’008 patent further discloses controlling the transmission of data based on such real-time measurement information based on real-time monitoring of network quality without negatively impacting the flow of data, which was a novel technological solution that was not well understood, routine, or conventional at the time of invention. The novel methods and systems disclosed in the ’008 patent for accomplishing this real-time monitoring of network quality and control of data transmission improved transmission quality and increased available bandwidth, resulting in improved network performance.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Infringement of the ’550 Patent)

28. TP-Link repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

29. Netgear has infringed and continues to infringe the ’550 patent by making, using, selling, testing, and/or importing in the United States certain products, including Netgear Orbi products, including at least products part of the Orbi 970 Series, Orbi 960 Series, Orbi 950 Series, Orbi 860 Series, Orbi 850 Series, Orbi 760 Series, Orbi 750 Series, Orbi 650 Series, Orbi Tri-Band Mesh System, and Netgear Nighthawk products, including at least products part of the Nighthawk Tri-Band Mesh Series, Nighthawk Dual-Band Mesh Series, Nighthawk Tri-Band Wi-Fi 7 Router, Nighthawk Tri-Band and Dual-Band RAXE Series Routers, Nighthawk Tri-Band and Dual-Band RAX Series Routers, and Nighthawk Tri-Band and Dual-Band LAX Series Routers.

30. Netgear infringes every claim limitation in at least one claim of the ’550 patent, in violation of 35 U.S.C. § 271, either literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit 6.

31. Netgear has been aware of the ’550 patent and its infringement of the ’550 patent, at least since the filing or receipt of TP-Link’s complaint against Netgear regarding this issue in the International Trade Commission, but nevertheless engaged in egregious conduct and proceeded with the infringing activities with intent to infringe. Netgear’s infringement is willful.

32. Further, Netgear has induced, and continues to induce, direct infringement of the ’550 patent at least by its customers and/or end users with the specific intent that such customers’ and/or end users’ acts infringe the ’550 patent. Netgear actively induces others to infringe at least the asserted method claims through their sale of products accused of infringing the ’550 patent customers in the United States. Netgear creates and distributes promotional and product literature for the accused products that is designed to instruct, encourage, enable, and facilitate the user of the accused products in a manner that directly infringes, as shown in the attached chart. *See* Exhibit 6.

33. Netgear induces such infringing acts and knows or should have known that its actions would induce direct infringement of the ’550 patent. Netgear has had actual notice of the ’550 patent and its infringement of the ’550 patent at least since the filing or receipt of TP-Link’s complaint against Netgear regarding this issue in the International Trade Commission. Netgear’s knowledge of infringement of the ’550 patent, and its continued sale, offer for sale, and/or importation of the Accused Products constitutes infringement as well as active inducement of others to infringe.

34. Netgear contributorily infringes through its sales and offers to sell within the United States and/or importation into the United States of components such as Wi-Fi routers and/or spare parts, constituting a material part of the ’550 patent claims, knowing the same to be especially made or especially adapted for use in an infringement of the ’550 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. Due to the specific designs of the products accused of infringing the ’550 patent, as set forth in Exhibit 6, Wi-Fi routers and components thereof such as spare parts do not have any substantial non-infringing uses.

35. Netgear has profited from and will continue to profit from its infringing activities at TP-Link’s expense. TP-Link has been and will continue to be damaged and harmed by Netgear’s infringing activities.

**SECOND CLAIM FOR RELIEF**

**(Infringement of the ’148 Patent)**

36. TP-Link repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

37. Netgear has infringed and continues to infringe the ’148 patent by making, using, selling, testing, and/or importing in the United States certain products, including Netgear Wi-Fi 6, 6E, and 7 products, including at least products part of the Orbi 970 Series, Orbi 960 Series, Orbi 950 Series, Orbi 860 Series, Orbi 850 Series, Orbi 760 Series, Orbi 750 Series, Orbi 650 Series, Orbi Tri-Band Mesh System, and Netgear Nighthawk products, including at least products part of the Nighthawk Tri-Band Mesh Series, Nighthawk Dual-Band Mesh Series, Nighthawk Tri-Band Wi-Fi 7 Router, Nighthawk Tri-Band and Dual-Band RAXE Series Routers, Nighthawk Tri-Band and Dual-Band RAX Series Routers, and Nighthawk Tri-Band and Dual-Band LAX Series Routers.

38. Netgear infringes every claim limitation in at least one claim of the ’148 patent, in violation of 35 U.S.C. § 271, either literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit 7.

39. Netgear has been aware of the ’148 patent and its infringement of the ’148 patent, at least since the filing or receipt of TP-Link’s complaint against Netgear regarding this issue in the International Trade Commission, but nevertheless engaged in egregious conduct and proceeded with the infringing activities with intent to infringe. Netgear’s infringement is willful.

40. Further, Netgear has induced, and continues to induce, direct infringement of the ’148 patent at least by its customers and/or end users with the specific intent that such customers’ and/or end users’ acts infringe the ’148 patent. Netgear actively induces others to infringe at least the asserted method claims through their sale of products accused of infringing the ’148 patent to customers in the United States. Netgear creates and distributes promotional and product literature for the accused products that is designed to instruct, encourage, enable, and facilitate the user of the accused products in a manner that directly infringes, as shown in the attached chart. *See* Exhibit 7.

41. Netgear induces such infringing acts and knows or should have known that its actions would induce direct infringement of the ’148 patent. Netgear has had actual notice of the ’148 patent and its infringement of the ’148 patent, at least since the filing or receipt of TP-Link’s complaint against Netgear regarding this issue in the International Trade Commission. Netgear’s knowledge of infringement of the ’148 patent, and its continued sale, offer for sale, and/or importation of the Accused Products constitutes infringement as well as active inducement of others to infringe.

42. Netgear contributorily infringes through its sales and offers to sell within the United States and/or importation into the United States of components such as Wi-Fi routers and/or spare parts, constituting a material part of the ’148 patent claims, knowing the same to be especially made or especially adapted for use in an infringement of the ’148 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. Due to the specific designs of the accused products, as set forth in Exhibit 7, Wi-Fi routers and components thereof such as spare parts do not have any substantial non-infringing uses.

43. Netgear has profited from and will continue to profit from its infringing activities at TP-Link's expense. TP-Link has been and will continue to be damaged and harmed by Netgear's infringing activities.

**THIRD CLAIM FOR RELIEF**

**(Infringement of the '357 Patent)**

44. TP-Link repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

45. Netgear has infringed and continues to infringe the '357 patent by making, using, selling, testing, and/or importing in the United States certain products, including Netgear Wi-Fi 6, 6E, and 7 products, such as the Netgear Orbi products, including at least products part of the Orbi 970 Series, Orbi 960 Series, Orbi 950 Series, Orbi 860 Series, Orbi 850 Series, Orbi 760 Series, Orbi 750 Series, Orbi 650 Series, Orbi Tri-Band Mesh System, and Netgear Nighthawk products, including at least products part of the Nighthawk Tri-Band Mesh Series, Nighthawk Dual-Band Mesh Series, Nighthawk Tri-Band Wi-Fi 7 Router, Nighthawk Tri-Band and Dual-Band RAXE Series Routers, Nighthawk Tri-Band and Dual-Band RAX Series Routers, and Nighthawk Tri-Band and Dual-Band LAX Series Routers.

46. Netgear infringes every claim limitation in at least one claim of the '357 patent, in violation of 35 U.S.C. § 271, either literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit 8.

47. Netgear has been aware of the '357 patent and its infringement of the '357 patent, at least since the filing or receipt of TP-Link's complaint against Netgear regarding this issue in the International Trade Commission, but nevertheless engaged in egregious conduct and proceeded with the infringing activities with intent to infringe. Netgear's infringement is willful.

48. Further, Netgear has induced, and continues to induce, direct infringement of the '357 patent at least by its customers and/or end users with the specific intent that such customers' and/or end users' acts infringe the '357 patent. Netgear actively induces others to infringe at least the asserted method claims through their sale of products accused of infringing the '357 patent to customers in the United States. Netgear creates and distributes promotional and product literature for the accused

products that is designed to instruct, encourage, enable, and facilitate the user of the accused products in a manner that directly infringes, as shown in the attached chart. *See* Exhibit 8.

49. Netgear induces such infringing acts and knows or should have known that its actions would induce direct infringement of the ’357 patent. Netgear has had actual notice of the Asserted Patents at least upon the filing or service of this Complaint. Netgear’s knowledge of infringement of the ’357 patent, and its continued sale, offer for sale, and/or importation of the Accused Products constitutes infringement as well as active inducement of others to infringe.

50. Netgear contributorily infringes through its sales and offers to sell within the United States and/or importation into the United States of components such as Wi-Fi routers and/or spare parts, constituting a material part of the ’357 patent claims, knowing the same to be especially made or especially adapted for use in an infringement of the ’357 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. Due to the specific designs of the accused products, as set forth in Exhibit 8, Wi-Fi routers and components thereof such as spare parts do not have any substantial non-infringing uses.

51. Netgear has profited from and will continue to profit from its infringing activities at TP-Link’s expense. TP-Link has been and will continue to be damaged and harmed by Netgear’s infringing activities.

**FOURTH CLAIM FOR RELIEF**

**(Infringement of the ’268 Patent)**

52. TP-Link repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

53. Netgear has infringed and continues to infringe the ’268 patent by making, using, selling, testing, and/or importing in the United States certain products, including Netgear Wi-Fi 7 products, including at least products part of the Orbi 970 Series and the Nighthawk Tri-Band Wi-Fi 7 Router.

54. Netgear infringes every claim limitation in at least one claim of the ’268 patent, in violation of 35 U.S.C. § 271, either literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit 9.

55. Netgear has been aware of the ’268 patent and its infringement of the ’268 patent, at least since the filing or receipt of TP-Link’s complaint against Netgear regarding this issue in the International Trade Commission, but nevertheless engaged in egregious conduct and proceeded with the infringing activities with intent to infringe. Netgear’s infringement is willful.

56. Further, Netgear has induced, and continues to induce, direct infringement of the ’268 patent at least by its customers and/or end users with the specific intent that such customers’ and/or end users’ acts infringe the ’268 patent. Netgear actively induces others to infringe at least the asserted method claims through their sale of products accused of infringing the ’268 patent to customers in the United States. Netgear creates and distributes promotional and product literature for the accused products that is designed to instruct, encourage, enable, and facilitate the user of the accused products in a manner that directly infringes, as shown in the attached chart. *See* Exhibit 9.

57. Netgear induces such infringing acts and knows or should have known that its actions would induce direct infringement of the ’268 patent. Netgear has had actual notice of the ’268 patent and its infringement of the ’268 patent, at least since the filing or receipt of TP-Link’s complaint against Netgear regarding this issue in the International Trade Commission. Netgear’s knowledge of infringement of the ’268 patent, and its continued sale, offer for sale, and/or importation of the Accused Products constitutes infringement as well as active inducement of others to infringe.

58. Netgear contributorily infringes through its sales and offers to sell within the United States and/or importation into the United States of components such as Wi-Fi routers and/or spare parts, constituting a material part of the ’268 patent claims, knowing the same to be especially made or especially adapted for use in an infringement of the ’268 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. Due to the specific designs of the accused products, as set forth in Exhibit 9, Wi-Fi routers and components thereof such as spare parts do not have any substantial non-infringing uses.

59. Netgear has profited from and will continue to profit from its infringing activities at TP-Link’s expense. TP-Link has been and will continue to be damaged and harmed by Netgear’s infringing activities.

## FIFTH CLAIM FOR RELIEF

## (Infringement of the '008 Patent)

60. TP-Link repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

61. Netgear has infringed and continues to infringe the '008 patent by making, using, selling, testing, and/or importing in the United States certain products, including Netgear Orbi products, including at least products part of the Orbi 970 Series, Orbi 960 Series, Orbi 950 Series, Orbi 860 Series, Orbi 850 Series, Orbi 760 Series, Orbi 750 Series, Orbi 650 Series, Orbi Tri-Band Mesh System, and Netgear Nighthawk products, including at least products part of the Nighthawk Tri-Band Mesh Series, Nighthawk Dual-Band Mesh Series, Nighthawk Tri-Band Wi-Fi 7 Router, Nighthawk Tri-Band and Dual-Band RAXE Series Routers, Nighthawk Tri-Band and Dual-Band RAX Series Routers, and Nighthawk Tri-Band and Dual-Band LAX Series Routers.

62. Netgear infringes every claim limitation in at least one claim of the '008 patent, in violation of 35 U.S.C. § 271, either literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit 10.

63. Netgear has been aware of the '008 patent and its infringement of the '008 patent, at least since the filing or receipt of TP-Link's complaint against Netgear regarding this issue in the International Trade Commission, but nevertheless engaged in egregious conduct and proceeded with the infringing activities with intent to infringe. On information and belief, Netgear's infringement is willful.

64. Netgear has profited from and will continue to profit from its infringing activities at TP-Link's expense. TP-Link has been and will continue to be damaged and harmed by Netgear's infringing activities.

## PRAYER FOR RELIEF

TP-Link respectfully requests the following relief:

A. That the Court enter judgment that Netgear willfully infringes each of the Asserted Patents;

B. That the Court award damages to TP-Link for Netgear's infringement, including interest;

C. That the Court award treble damages and attorneys' fees under 35 U.S.C. §§ 284 and 285;

D. That the Court award TP-Link its statutory costs; and

E. That the Court award TP-Link any and all other relief to which TP-Link may be entitled and that the Court may deem just, equitable, and proper.

## JURY DEMAND

TP-Link respectfully demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all claims and issues so triable.

DATED: May 8, 2024

Respectfully submitted,

*/s/ Brandon H. Brown*

Brandon H. Brown (SBN 266347)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: bhbrown@kirkland.com

Gregory S. Arovas (*pro hac vice* application forthcoming)
Todd M. Friedman (*pro hac vice* application forthcoming)
Alex Henriques (*pro hac vice* application forthcoming)
James E. Marina (*pro hac vice* application forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: greg.arovas@kirkland.com
Email: todd.friedman@kirkland.com
Email: alex.henriques@kirkland.com
Email: james.marina@kirkland.com

Paul F. Brinkman (*pro hac vice* application forthcoming)
KIRKLAND & ELLIS LLP
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5100
Email: paul.brinkman@kirkland.com

*Attorneys for Plaintiff TP-Link*